Filed 9/8/21  P. v. Session CA4/2
See Dissenting Opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075808 |
| v. | (Super.Ct.No. FVI023867) |
| JEROME CORNELL SESSION, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Eric M. Nakata, Judge.  Affirmed.

Law Offices of Steven Schorr, Steven Schorr under appointment by the Court of Appeal, for Defendant and Appellant.

1

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Mary Katherine Strickland, Deputy Attorneys General, for Plaintiff and Respondent.

In 2006, defendant Jerome Session and his codefendant Shamar Thornton robbed a convenience store, during which Thornton shot and killed the clerk. They were separately tried in 2009; a jury found Session guilty of first degree of murder (Pen. Code, §§ 187, subd. (a), 189)[1] and robbery (§ 211), along with a true finding on a felony-murder special circumstance allegation. In addition, defendant admitted he had previously been convicted of a serious or violent felony under the Three Strikes law (§ 667, subds. (b)-(i)). Defendant was sentenced to life without the possibility of parole (LWOP). (§ 190.2, subd. (a)(17)(A).) Defendant appealed that conviction; we affirmed the convictions for murder and robbery but we reversed the special circumstance finding due to the court's failure to read CALCRIM No. 703 and remanded for further proceedings and resentencing.

Following retrial, the special circumstance allegation was again found true, defendant was resentenced to LWOP, and he appealed that finding again. On appeal, we affirmed the special circumstance finding. In 2019, following the enactment of section 1170.95 pursuant to passage of Senate Bill No. 1437 (SB 1437), defendant filed a petition for resentencing. That petition was denied without issuing an order to show cause, and defendant appeals that ruling.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

In this appeal, defendant argues that the special circumstance finding does not automatically render him ineligible for relief under section 1170.95, and that the record of conviction does not support the trial court's finding that he is ineligible for relief. We affirm.

## BACKGROUND

1. *Facts Pertaining to the Crime*

We take the facts of the crime from the original opinion on direct appeal, *People v. Session,* February 9, 2011*,* E049939, nonpublished opinion.

Shortly before 1:00 a.m. on March 21, 2006, two Black males, later identified as Thornton and Session, walked into the 7-Eleven store on the corner of Highway 18 and Apple Valley Road near Apple Valley. Thornton and Session forced Gould, the store clerk, to give them all the money that was in the store's two cash registers, a total of $62. They then forced Gould into a back storage room, where Thornton shot and killed him.

The robbery was captured on store surveillance cameras, but the murder of Gould in the back storage room was not. The surveillance videos, which were played for the jury, showed Thornton and Session forcing Gould to open the store's two cash registers, with Thornton pointing a gun at Gould. The videos also showed the two men forcing Gould toward the back of the store, out of the range of the surveillance cameras. Gould was found dead in the back storage room. He had been shot 9 to 10 times with a nine-millimeter semiautomatic handgun, and died at the scene.

On March 25, two days after surveillance videos and still photographs of the suspects were released to the media, Thornton was taken into custody and Session turned himself in. That same day, Session waived his *Miranda*[2] rights and spoke to detectives, both individually and in a joint interview with Thornton. Session's individual interview and joint interview with Thornton were recorded on DVD and admitted into evidence at Session's trial.

During the interviews, Session told detectives that he and Thornton were driving around in Session's car shortly before the robbery and were talking about the fact they needed money. Thornton needed money to help his girlfriend move, and Session had lost his job and owed money on his car. Around 40 minutes before the robbery, they stopped at another store and Thornton purchased gloves for the two of them. They later drove by the 7-Eleven store and decided to rob it when they saw that no one was in the store.

Session parked his car behind the 7-Eleven store. When Session and Thornton entered the store, the clerk was in the first aisle, sweeping with a broom. Thornton walked up to the clerk while Session was in another aisle, and Session overheard the clerk say something like, "okay, okay, I'm gonna go get it . . . ." At that point, Session looked down the first aisle and saw that Thornton had a gun and was pointing it at the clerk.

Session claimed he did not know Thornton had a gun until he saw him pointing it at the clerk. He thought they were going to commit a robbery using their "hands."

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

Session admitted, however, that he had previously heard of Thornton having guns.  He also said he could have left the store when he saw Thornton pointing a gun at the clerk, but he decided to continue with the robbery.

Session admitted he then grabbed the clerk by the back of his shirt and took him to the store's two cash registers.  There, the clerk took the cash out as directed, and Session put the cash in his pocket.  Thornton then began asking the clerk where the surveillance tape was.  The clerk said he did not have access to the tape.  The owner of the store testified that the computer on which the surveillance videos were recorded was in a locked office in the store which the store clerks could not access.

Session forced the clerk to the back storage room, and Thornton followed.  Session claimed he intended "to just take [Gould] to the back, probably just sock on him a couple times, just so [he and Thornton could] get enough time to get away or somethin' like that."  In the storage room, Session pushed Gould against a wall and heard a gunshot as he raised his hand to hit Gould.  He claimed the first shot grazed his arm.  He walked out of the room after he heard the first shot, then he heard "[a]t least" seven more shots.  He and Thornton then ran out of the store.  Inside Session's car, Session and Thornton split the money they had stolen, and Session complained he had been hit with a bullet.  Thornton told Session he was sorry Session had been hit and, if they got caught, he (Thornton) would take the "rap" for what had happened.

Session admitted Gould was "very cooperative" and, on the way to the storage room, was pleading with Session and Thornton not to hurt him.  After they left the store,

5

Session dropped Thornton off in "the flats," then went to a friend's house. Video surveillance tapes from another 7-Eleven store on Bear Valley Road showed Session in that store shortly after 2:00 a.m., purchasing a 40-ounce beer and cigars. Session admitted he was at the other 7-Eleven store shortly after the robbery.

Immediately after their joint interview, Session and Thornton spoke with each other. They were friendly toward each other, and Session showed no signs of animosity toward Thornton for his having shot and killed Gould. They talked about where the police had been looking for them and who had given information to the police concerning their whereabouts. Session also indicated he had turned himself in because others had been "runnin' their mouth[s]."

2.      *Procedural History*

Following his conviction, defendant appealed, challenging the trial court's failure to give CALCRIM No. 703 relating to the special circumstance finding, and the imposition of a $10,000 parole revocation restitution fine. (*People v. Session* (Feb. 9, 2011) E049939, [nonpub. opn.].) We affirmed the murder and robbery convictions but reversed the special circumstance finding and remanded the matter for further proceedings and resentencing. (*Ibid.*)

Following retrial of the special circumstance allegation, the jury again returned a true finding and defendant was resentenced to a term of LWOP.[3] Defendant again appealed. (*People v. Session* (Sept. 14, 2012) E053942, [nonpub. opn.].) On appeal,

---

[3] On resentencing, the parole revocation restitution fine pursuant to section 1202.45 was not imposed.

defendant argued that CALCRIM No. 705 should have been modified to emphasize the nature of the direct or circumstantial evidence of defendant's mental state on which the jury could base its finding. We affirmed the special circumstances finding because other instructions amply covered that issue. (*People v. Session, supra*, E053942.)

On June 17, 2019, following the enactment of section 1170.95, defendant filed a petition for resentencing. The trial court denied the petition on August 28, 2020, and defendant appeals that ruling.

## DISCUSSION

1.  *The Trial Court Properly Found Defendant Was Ineligible for Resentencing.*

Defendant argues that the trial court erred in dismissing his petition without issuing an order to show case. He argues that the record of his conviction does not demonstrate he had an intent to kill or that he was a major participant who acted with reckless indifference, and that any finding to the contrary made by the jury cannot stand because the decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), "altered the law with respect to those elements." He also argues that he should be permitted to challenge the validity of his murder conviction by way of his section 1170.95 petition, instead of having to first make a collateral challenge by way of petition for writ of habeas corpus. We disagree.

Defendant acknowledges that a finding of ineligibility is appropriate if the record of conviction demonstrates that "'"the petitioner is ineligible for relief as a matter of

7

law,"''" citing *People v. Galvan* (2020) 52 Cal.App 5th 1134, 1140 (*Galvan*), review granted October 14, 2020, S264284. However, he argues that consideration of the finding on the special circumstances finding following our remand does not, as a matter of law, render him ineligible for resentencing relief because the California Supreme Court decisions in *Banks* and *Clark*, "altered the law with respect to those elements." Again we disagree.

At the prima facie review stage under section 1170.95, the record is to be construed in his favor unless facts in the record "conclusively refute" his claim that he was convicted on the basis of the natural and probable consequences doctrine or the felony-murder rule despite the special-circumstance finding. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 968, 980 (*Drayton*); but see *People v. Garcia* (2020) 57 Cal.App.5th 100, 116, rev. grntd. Feb. 10, 2021, S265692 [disagreeing with *Drayton* as to standard for prima facie sufficiency].)

An obligation to read the factual record in a petitioner's favor does not change the nature of this court's task in determining the legal effect of express jury findings and whether they establish that the petitioner is ineligible for relief as a matter of law. The jury's true finding on the special-circumstance allegation, based on proper instructions, is dispositive here and establishes defendant is ineligible for section 1170.95 relief as a matter of law. "The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to

8

provide a do-over on factual disputes that have already been resolved." (*People v. Allison* (2020) 55 Cal.App.5th 449, 461 (*Allison*).)

The requirements for the felony-murder special circumstance did not change as a part of SB 1437 and are identical to the new requirements for felony murder following the enactment of SB 1437. In both instances, the defendant must have either actually killed the victim (§§ 189, subd. (e)(1), 190.2, subd. (b)); acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in the killing (§§ 189, subd. (e)(2), 190.2, subd. (c)); or been a major participant in the underlying felony and acted with reckless indifference to human life. (§§ 189, subd. (e)(3), 190.2, subd. (d); see *In re Ramirez* (2019) 32 Cal.App.5th 384, 393.)

By finding a felony-murder special circumstance allegation true, the jury made precisely the same finding it would have to make in order to convict a defendant of felony murder under the new law. Because a defendant with a felony-murder special circumstance could still be convicted of murder following the amendments to sections 188 and 189, he is ineligible as a matter of law to have his murder conviction vacated. (See § 1170.95, subd. (a)(3); *Galvan*, *supra*, 52 Cal.App.5th at pp. 1140-1141.)

As a matter of law, the true finding on the special circumstance allegation, whereby the jury expressly determined that defendant was a major participant acting with reckless indifference to human life, renders defendant ineligible for relief under section 1170.95.

9

a.      *Banks and Clark Did Not Change the Law*

Like several courts before us, we recognize there is a split over whether such a pre-*Banks/Clark* felony-murder special circumstance finding renders a petitioner ineligible for relief under section 1170.95 as a matter of law.  (See *People v. Jones* (2020) 56 Cal.App.5th 474, 478-479 (*Jones*), citing *People v. Gomez* (2020) 52 Cal.App.5th 1 (*Gomez*), review granted Oct. 14, 2020, S264033; *Galvan*, *supra*, 52 Cal.App.5th 1134 (*Galvan*), review granted Oct. 14, 2020, S264284, *People v. Murillo* (2020) 54 Cal.App.5th 160 (*Murillo*), review granted November 18, 2020, S264978; and *Allison, supra,* 55 Cal.App.5th 449 [concluding the special circumstance finding renders a petitioner ineligible for relief as a matter of law; rev. denied *People v. Allison*, (Dec. 23, 2020, S265450)]; contrast with *People v. Torres* (2020) 46 Cal.App.5th 1168 (*Torres*), review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835; and *People v. York* (2020) 54 Cal.App.5th 250 (*York*), review granted November 18, 2020, S264954 [reaching the conclusion that special circumstances findings do not preclude a defendant from obtaining relief pursuant to section 1170.95]; and *People v. Secrease* (2021) 63 Cal.App.5th 231, 255, 256 (*Secrease*), review granted June 30, 2021, S268862 [concluding defendant need not obtain a vacatur of the special circumstance finding by way of habeas corpus before seeking relief under section 1170.95].)

We agree with the *Gomez/Galvan* line of decisions and hold that *Banks* and *Clark* did not change the law, and, as we already noted, the felony-murder special circumstance

findings, as part of the record of conviction, renders Sessions ineligible for relief under section 1170.95 as a matter of law.

One issue at the center of the debate is the question whether *Banks* and *Clark* narrowed or otherwise altered the meaning of the terms "major participant" and acting with "reckless indifference to human life," which are key to eligibility or ineligibility for relief under section 1170.95. Defendant asserts the meaning of the terms has been altered. He therefore contends the fact that the jury found the special circumstance allegations (which included requirements the jury specifically find he was a major participant and that he acted with reckless indifference to human life) true, he is not precluded from relief under section 1170.95.

In addition to the *Gomez* and *Galvan* line of cases, even earlier cases, like that of *In re Miller* (2017) 14 Cal.App.5th 960, 979, concluded that *Banks* and *Clark* did not create new law; those decisions simply discussed what the terms "major participant" and "acting with reckless indifference to human life," actually meant for purposes of performing a substantial evidence review of felony murder special circumstances. In *Banks*, the Supreme Court noted that the text of section 190.2, subdivision (d), adopted pursuant to the passage of Proposition 115 in 1990, was intended to codify the holding of *Tison v. Arizona* (1987) 481 U.S. 137 [95 L.Ed.2d. 127, 107, S.Ct. 1676] (*Tison*), which articulated the constitutional limits on executing felony murderers who did not personally kill.

There, in *Banks,* the California Supreme Court addressed the question of whether the defendant was a major participant in the homicide, describing the spectrum of culpability of people involved in murders that occur during the commission of underlying felonies. The courts then engaged in a substantial evidence review of the special circumstance finding, applying factors it discussed as aiding the determination of whether there is sufficient evidence to support the findings. It said nothing about narrowing the definition of the term "major participant."

In *Clark* the court considered the sufficiency of the evidence to support the finding he acted with reckless indifference to human life, noting the overlap of the elements and concluding that the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life." (*Clark, supra*, 63 Cal.4th at p. 615, citing *Tison, supra*, 481 U.S. at p. 153.)

In explaining how to determine if there is substantial evidence of reckless indifference to human life, the court in *Clark* reasoned that "recklessness is not determined merely by reference to a defendant's subjective feeling that he or she is engaging in risky activities. Rather, recklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.' [Citation.]" (*Clark, supra*, 63 Cal.4th at p. 617.) The court then considered defendant's conduct against the factors and concluded that the defendant, who was a planner of the underlying felonies, but who was not physically present at the scene of the crimes and who had planned the burglary to occur after hours so as to minimize risks, did not act

12

with reckless indifference to human life. (*Id.,* at pp. 620-621.) The court reached its conclusion applying the substantial evidence standard of review (*ibid*) and did not declare it was narrowing the definition of "reckless indifference to human life."

Both *Banks* and *Clark* were decided after 2011, the year of our decision in the direct appeal, but they were decided after *Tison, supra,* and addressed the language of section 190.2, subdivision (d), which was enacted as part of Proposition 115 in 1990. Importantly, both cases involved review of the special circumstances finding on direct appeal. Neither case found the terms of section 190.2, subdivision (d) to be unconstitutionally vague or ambiguous, or violative of *Tison/Enmund* [*v. Florida* (1982) 458 U.S. 782 [73 L.Ed. 2d 1140, 102 S.Ct. 3368]] (*Enmund*) principles. Had the court done so, it would call into question every special circumstance finding made since 1990 using the statutory terminology of "major participant" acting with "reckless indifference."

All the cases addressing this issue, even those holding that felony murder special circumstances findings do not preclude relief, agree that the language of section 189, subdivision (e)(3), as amended by SB 1437, tracks the language of the special circumstance provision. (*York, supra*, 54 Cal.App.5th at p. 258; *Jones, supra*, 56 Cal.App.5th at p. 482; see also, *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419 [concluding that because "[t]he language of the special circumstance tracks the language of SB 1437 and the new felony-murder statutes," a jury's true finding on § 190.2, subd. (d) renders a § 1170.95 petitioner ineligible for relief].)

13

Although defendant's conviction predates the *Banks* and *Clark* decisions and the recent amendments to sections 188 and 189, on retrial of the special circumstance allegation, the jury was instructed it had to agree defendant "acted with either the intent to kill or with reckless indifference to human life and was a major participant in the crime for the special circumstances of murder during the commission of robbery to be true." This language, which traces the *Tison* requirements, satisfies the amended version of section 189.

Logically, if the Supreme Court had intended to narrow or alter our understanding of what "major participation" or "reckless indifference" means in *Banks* or *Clark*, it would not have resolved either case based on a determination of whether there was substantial evidence; instead, it would have announced a new rule requiring that juries be instructed to consider the factors it had outlined before making a finding on a special circumstance allegation. Significantly, it did not.

Instead, the court in *Banks* concluded that the evidence was insufficient as a matter of law to support the finding that *Banks*' codefendant Matthews was an major participant within the meaning of section 190.2, subdivision (d), applying factors to aid in the evaluation of the defendant's conduct Similarly, in *Clark*, the court concluded there was insufficient evidence that defendant was recklessly indifferent to human life for purposes of robbery-murder and burglary-murder special circumstance findings. Other decisions addressing *Banks* and *Clark* have described them as "explaining" or "clarifying" how to determine whether there is sufficient evidence to support a felony-murder special

14

circumstances in light of the United States Supreme Court decisions in *Tison, supra,* 481 U.S. 137 [95 L.Ed. 2d 127,107 S.Ct. 1676 and *Enmund, supra,* 458 U.S. 782 [73 L.Ed. 2d 1140, 102 S.Ct. 3368]. (See *In re Scoggins* (2020) 9 Cal.5th 667, 675, 676, italics added, citing *Banks*, *supra,* 61 Cal.4th at p. 811 ["We *explained* that when analyzing a defendant's culpability under the special circumstances statute, it is important to consider where the defendant's conduct falls on the 'spectrum of culpability' that *Enmund* and *Tison* established."].)

In short, neither *Banks* nor *Clark* changed, narrowed, or altered the law.

Our dissenting colleague disagrees, subscribing to the view that section 1170.95 was drafted in contemplation of a do-over of the trial where the court can reconsider and reweigh evidence of Session's statements, which the jury necessarily rejected in the original trial. This is inconsistent with the Supreme Court's statement that trial courts need not accept as true statements by a defendant in his or her petition which are refuted by the record of conviction. (*People v. Lewis* (2021) 11 Cal.5th 952, 962 (*Lewis*).)

Our colleague focuses on Session's statement that he was unaware Thornton had a gun as demonstrating he was entitled to his conviction reconsidered utilizing the *Banks* and *Clark* criteria. (Diss. Opn., p. 4) What is overlooked by our colleague is that the jury heard his statements, and it saw the videotape of the robbery as the crime unfolded, including Session's conduct *after* seeing Thornton with the weapon. What the jury saw contradicted Session's statements: after seeing the gun, Session forced the victim to the cash registers, took the money, and then forced the victim to the back room.

15

The videotape also refutes coparticipant Thornton's statements regarding Session's involvement, which were not admitted at trial, so even the addition of evidence of those statements could not have changed the outcome:  the jury saw for itself that Session was a major participant.  After all, despite hearing Session's statements, the jury convicted him of first degree murder with the special circumstance finding.  Yet our colleague would accept the allegations of the petition as true despite the record of conviction containing facts refuting them.  (*Lewis, supra,* 11 Cal.5th at p. 962.)

Reconsideration of the evidence after the decisions in *Banks* and *Clark* would not change the outcome.  Those decisions offer a number of factors to consider in determining if a defendant was a major participant acting with reckless indifference, but they are merely factors to consider.  Nevertheless, the factors support the verdict:  Session was involved in planning the robbery; Session knew Thornton had used firearms in the past; Session physically forced the clerk to the cash registers *after* seeing Thornton holding the gun; after taking the money from the cash registers it was Session who forced the clerk into the backroom where the shooting occurred, out of the view of the surveillance cameras.  After the robbery he went to a convenience store where he was captured on camera again.  These *Banks* factors support the validity of the first degree felony murder conviction under the *Banks/Clark* criteria.[4]

---

[4] Those criteria include:  "'What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position

*[footnote continued on next page]*

The jury heard Session's statements about being surprised to see the gun and saw the videotape, which refuted his statements. Thus, utilizing the *Banks* factors, the inevitable conclusion is the one drawn by the jury: He was a major participant who, even after seeing Thornton's gun, acted with reckless indifference by completing the robbery without taking steps to minimize the harm to the victim, circumstances that cannot change even with the benefit of *Banks* and *Clark.* Even after the amendments, he could have been convicted of first degree felony murder.

b.      *The Record of Conviction, Including the Special Circumstances Finding, Renders Defendant Ineligible for Relief under Section 1170.95.*

Defendant argues that the record of conviction does not support the trial court's determination that he was ineligible for relief pursuant to section 1170.95, and the special circumstance finding did not render him ineligible as a matter of law. Specifically, he points to our original opinion on direct appeal (*People v. Session, supra,* E049939) in asserting that the facts stated in the prior appellate opinion do not support a legal conclusion of ineligibility for relief. Additionally, he contends that the instructions given as to the underlying charge included aider-abettor instructions along with an instruction on the natural and probable consequences doctrine support a claim of eligibility under

_____

to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used? No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' (*Tison v. Arizona, supra,* 481 U.S. at p. 157) was sufficiently significant to be considered 'major.'" (*Banks, supra,* 61 Cal.4th at p. 803, citing *Tison, supra,* at p. 152; see also, *Kennedy v. Louisiana* (2008) 554 U.S.407, 421 [171 L.Ed.2d 525, 128 S.Ct. 2641.)

17

section 1170.95 because he could not be convicted of murder after the amendment to section 189. Unfortunately, the record of conviction, including our prior opinion in the direct appeal finding he was a major participant, refutes this claim. We therefore disagree.

SB 1437 amended the provisions of sections 188 and 189 to eliminate from liability for first degree murder those aiders-abettors who lack the intent to kill, were not major participants and did not act with reckless indifference to human life. It also added section 1170.95 to the Penal Code, permitting a person convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if he or she could not have been convicted of first or second degree murder because of SB 1437's changes to sections 188 and 189. (§ 1170.95, subd. (a).)

"To be eligible for resentencing under section 1170.95, [a defendant] must show that he 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as a part of Senate Bill No. 1437. [Citation.] Under the newly amended version of section 189, a defendant can be convicted of felony murder only if he was the actual killer; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (*Murillo, supra*, 54 Cal.App.5th at p. 167.)

18

If the petition contains all the information required by section 1170.95, subdivision (b)(1), the court will determine if an order to show cause should issue: "'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

In determining whether a petitioner has made the prima facie showing required under section 1170.95, subdivision (c), a trial court may consider the record of conviction. (*Lewis, supra,* 11 Cal.5th at p. 962) A defendant who is eligible for relief is one who can show "he 'could not be convicted of first or second degree murder because of changes to Section 188 or 189'" enacted by SB 1437. (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438; see *People v. Rivera* (2021) 62 Cal.App.5th 217, 229–230; *People v. Duchine* (2021) 60 Cal.App.5th 798, 811–814 (*Duchine*).)

Some courts describe the procedure for assessing the petition as being similar to that employed in determining whether to issue an order to show cause in a habeas corpus proceeding. (*People v. Aleo* (2021) 64 Cal.App.5th 865, 871-872 (*Aleo*); see also, *Drayton, supra*, 47 Cal.App.5th at p. 980.) Under this model, a trial court assessing the prima facie showing should assume all facts stated in the section 1170.95 petition are true, without evaluating the credibility of the petition's assertions, although it need not

credit factual assertions that are untrue as a matter of law. (*Drayton, supra,* at pp. 980-981.)

Just as in habeas corpus, if the record contains facts refuting the allegations made in the petition, the court is not required to accept the allegations of the petition as true, but consideration "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton, supra,* 47 Cal.App.5th at p. 980; *Aleo, supra,* 64 Cal.App.5th at p. 872.)

Thus, while a "court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing" (*Drayton*, *supra,* 47 Cal.App.5th at p. 978), "if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'" (*Id.* at p. 979, quoting *Serrano*, at p. 456; *Lewis, supra,* 11 Cal. 5th at p. 971.)

In reviewing the record of conviction, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis, supra,* 11 Cal. 5th at p. 971, citing *Drayton*, *supra*, 47 Cal.App.5th at p. 980.) Thereafter, accepting those facts that have not been refuted as true, "the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95(a), then the trial court should issue an order to show cause." (*Drayton, supra*, 47 Cal.App.5th at pp. 980–

981; see also, *Duchine, supra*, 60 Cal.App.5th at pp. 811–812.) A denial at the prima facie stage is appropriate only if the record of conviction demonstrates that "'the petitioner is ineligible for relief as a matter of law.'" (*Murillo, supra,* 54 Cal.App.5th at p. 167.)

The documents on which a trial court (or reviewing court) may base the eligibility determination must be part of the record of conviction. Those documents include the instructions provided to the jury at trial and any prior decision on appeal. (*People v. Offley* (2020) 48 Cal.App.5th 588, 596-597; *Gomez, supra*, 52 Cal.App.5th at p. 16, review granted Oct. 14, 2020, S264033.) "'"[T]he record of the prior conviction" means all items that could have been used on appeal of that prior conviction, specifically, any items considered a normal part of the record under California Rules of Court, rule 33 or by which it could be augmented pursuant to California Rules of Court, rule 12.'" (*People v. Woodell* (1998) 17 Cal.4th 448, 454, quoting *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350.) Such evidence may, and often does, include certified documents from the record of the prior proceeding and commitment to prison.[5] (§ 969b; Evid. Code, § 1280 [hearsay exception for contemporaneous official records]; *People v. Miles* (2008) 43 Cal.4th 1074, 1082, citing *People v. Prieto* (2003) 30 Cal.4th 226, 258–259, among other authorities.)

---

[5] Cases interpreting the procedure by which an allegation under the Three Strikes law is proven are helpful, where, as here, the court must determine whether the *nature* of a conviction meets a certain statutory definition.

Here, the record of conviction refutes defendant's assertion that he was not a major participant and did not act with reckless indifference to human life, where the jury made a true finding on the special circumstance allegation, the statutory elements of which include determinations of those elements.

Defendant argues that because the jury was instructed pursuant to CALCRIM No. 403, and because the prosecution discussed the natural and probable consequences doctrine at trial, he is eligible for relief under section 1170.95. That does not necessarily follow: at trial, the jury was instructed on theories of both premeditated murder and felony murder.[6] The People's theory, supported by video evidence, was that defendant was directly guilty of robbery because he took the money from the victim's presence by force or fear. This is a direct aider-abettor theory that renders defendant a major participant in the murder. Any theory that the murder was the natural and probable consequence of the robbery does not necessarily mean that defendant could not be convicted of felony murder following passage of SB 1437, where the instructions given support the theory the defendant aided and abetted the murder, rather than the robbery. Considering the jury's finding as to the special circumstances allegation, where the jury necessarily determined he was a major participant and acted with reckless indifference to human life, the record of conviction refutes any assertion he was convicted under a natural and probable consequences theory.

---

[6] The defendant has requested that we take judicial notice of the records from both trials and we granted that request.

22

Considered in light of the felony murder special circumstances finding in the later proceeding defendant could therefore have been convicted of first degree murder after the amendments to section 189.

The trial court properly determined that defendant was ineligible for relief under section 1170.95.

c.    *Appellant May Not Collaterally Attack Either His Murder Conviction or the Special Circumstances Finding By Way of a Section 1170.95 Petition.*

Defendant argues that the procedure designed for resentencing a defendant who was convicted of murder although not the actual killer permits collateral challenges to the underlying conviction in a petition for resentencing, relying on *York*, *supra*, 54 Cal.App.5th 250.  He acknowledges, as does the court in *York,* that nothing in section 1170.95 expressly authorizes such an approach.  (*York,* at p. 260)  He suggests that the only reason the *Galvan* line of cases held that a habeas petition must be filed to raise a collateral challenge to his conviction is "because section 1170.95 does not expressly 'allow a *Banks* and *Clark* challenge to a felony-murder special circumstance . . . ' (*Galvan, supra*, 52 Cal.App.5th at p. 1143.)"  We decline the invitation because it would turn the concepts of collateral estoppel, res judicata, and finality of judgment on its ear.

In *York* the court agreed — up to a point — with *Galvan* and *Gomez* "insofar as those cases hold that section 1170.95 does not create a mechanism to challenge a special circumstance allegation under section 190.2, subdivision (a)(17)," but agreed with the analyses in *Torres* and *Smith* in subscribing to the view that section 1170.95 permits a

petitioner to challenge a *murder* conviction.  (*York, supra*, 54 Cal.App.5th at p. 260.)  It concluded that section 1170.95 does not require a defendant to challenge a pre-*Banks* and *Clark* special circumstance finding in a habeas corpus proceeding before bringing a section 1170.95 petition because it could find no a statutory requirement for doing so.  (*York, supa*, 54 Cal.App.5th at pp. 259, 260.)  However, the fact the *York* court could find no authority does not mean there is none.

Direct appeal is the primary avenue for review of a conviction or sentence.  (*Barefoot v. Estelle* (1983) 463 U.S. 880, 887 [103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090, 1100].)  Habeas corpus is available to challenge the constitutionality of such prior convictions (*People v. Allen* (1999) 21 Cal.4th 424, 429), but in all other respects, the underlying conviction is final.  "Society's interest in the finality of criminal proceedings so demands . . . .  [Citations.]"  (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1260 (*Gonzalez*).)  An attack on a special circumstance finding in a section 1170.95 proceeding constitutes a collateral attack on the judgment.  (*People v. Simmons* (2021) 65 Cal.App.5th 739, 748 (*Simmons*), citing *Galvan, supra,* 52 Cal.App.5th at p.1142, review granted Oct. 14, 2020, S264284; *Gomez, supra*, 52 Cal.App.5th at p. 16, review granted.)  Yet the statute does not confer the authority to lodge a collateral attack on a final judgment in a petition filed pursuant to section 1170.95.

This presumption of validity of the judgment leads to a "presumption against the validity of a collateral attack on such a conviction and sentence[, which] weighs strongly toward close appellate review of all mixed law and fact determinations leading to a lower

24

court's decision to grant relief on habeas corpus." (*People v. Ault* (2004) 33 Cal.4th 1250, 1268.) "'"For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended.'" [Citations.]" (*In re Lawley* (2008) 42 Cal.4th 1231, 1240.) "[J]ury findings in a final judgment are generally considered to be valid and binding unless and until they are overturned by collateral attack, regardless of whether they were subjected to appellate review. Nothing in *Banks* or *Clark* supports the automatic invalidation or disregard of such findings by a properly instructed jury." (*People v. Nunez* (2020) 57 Cal.App.5th 78, 94, review granted January 13, 2021, S265918)

Even in *Secrease, supra*, the reviewing court "agree[d] with a central premise of the reasoning in *Jones* and *Allison* . . . that section 1170.95, subdivision (c) cannot reasonably be read to permit a 'do-over' of factual issues that were necessarily resolved against a section 1170.95 petitioner by a jury," but disagreed that habeas is the only mechanism for challenging the finding. (*Secrease, supra,* 63 Cal.App.5th pp. 254-255.) It then went on to conclude that where "no court has ever determined whether the felony-murder special-circumstance finding rendered against [a petitioner] meets the minimum standards of personal culpability enunciated in [*Banks* and *Clark*]," the petitioner is entitled to such review in a section 1170.95 resentencing proceeding. (*Secrease*, at p. 236.)

25

The reasoning of *Secrease* is unsound: if the section 1170.95 petition does not permit a 'do-over,' it does not permit a collateral attack on a final judgment. The court in *Allison* summed up the fallacy underlying the premise of *Torres* and *York,* and, by extension, *Secrease.* "We do not believe it is reasonable to interpret section 1170.95 as allowing for such challenges, namely, challenges based on attacks on prior factual findings. Nothing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding. In particular, subdivision (a)(3) of section 1170.95 says nothing about erroneous prior findings or the possibility of proving contrary facts if given a second chance. Rather, it requires that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189, not because a prior fact finder got the facts wrong*. The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Allison, supra*, 55 Cal.App.5th at pp. 461-462.)

We agree with those cases holding that "a petitioner who wishes to collaterally attack the special circumstance finding as invalid under current law, must first seek to invalidate that finding through a petition for writ of habeas corpus before seeking resentencing pursuant to section 1170.95." (*Simmons, supra,* 65 Cal.App.5th at p. 748, citing *Galvan, supra,* 52 Cal.App.5th at p. 1142; *Gomez, supra*, 52 Cal.App.5th at p. 17; *Jones, supra*, 56 Cal.App.5th at p. 485, review granted.)

26

"These courts reason that a contrary interpretation 'would read into section 1170.95 a new procedure allowing petitioners to ignore a special circumstance finding—no matter how well supported in the record—as well as the recognized method of challenging it. Such petitioners would be allowed to relitigate a prior jury finding at an evidentiary hearing where the prosecution bears the burden of proving the truth of the finding, beyond a reasonable doubt, a second time.' [Citation.]" (*Simmons, supra*, 65 Cal.App.5th at p. 748.)

Nothing in the statute or the legislative history supports the notion that prior factual findings are subject to relitigation, or that we are free to substitute our opinion for that of the jury respecting a presumptively valid final conviction. The only proper way to make this determination is by reviewing the record of conviction. A defendant who desires to collaterally challenge findings made by the jury based on the evidence presented at trial, must avail himself of the appropriate vehicle. If successful in challenging his first degree murder conviction in such a proceeding, he would be eligible for resentencing under section 1170.95. (*Gomez, supra,* 52 Cal.App.5th at p. 17.)

Ignoring the fact that defendant in this case has waited many years after the decisions in *Banks* and *Clark* to make the claim that he should not have been convicted of felony murder, rather than bringing a collateral challenge to his conviction as soon as *Banks* and *Clark* were decided, he does not make a compelling case for ignoring the proper procedure. The *York* decision relied upon by defendant did not consider the impact of its decision (that a defendant should be allowed to raise a collateral attack on a

27

final judgment by way of a section 1170.95 petition) on the well-settled principles governing our review of final judgments. We are not willing to expand our jurisdiction.

2. *Whether the Trial Court Engaged in Judicial Fact Finding at the Prima Facie Stage.*

Defendant argues that the court erroneously engaged in judicial fact finding at the prima facie stage, mandating reversal. He focuses on the court's statement that it had been "the trial judge" who "had two opportunities to hear evidence of the robbery and murder" as the basis for its "belie[f]" that both the felony murder and aider and abettor theories on which appellant was tried "were proven beyond a reasonable doubt." Based on this statement, defendant asserts the court misunderstood the applicable standard of review and the approach it was required to take at the prima facie stage. Defendant mischaracterizes the court's statement as a factual finding.

The "authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd[ivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton, supra*, 47 Cal.App.5th at p. 980 [overruled on a different point in *Lewis, supra*, 11 Cal. 5th at p. 963].) "'If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of

28

section 1170.95[, subdivision ](a), then the trial court should issue an order to show cause. [Citation.]' [Citation.]" (*People v. Gonzalez* (2021) 65 Cal.App.5th 420, 432.)

In proceedings under section 1170.95, trial courts may rely on facts readily ascertainable from the record of conviction, and that "if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.]" (*Drayton, supra*, 47 Cal.App.5th at p. 980.) Here, the trial court's statement in its written ruling was not a factual determination but, rather, determination that substantial evidence supported the jury verdicts, i.e., a finding the People had proven the charges beyond a reasonable doubt, which, in turn, rendered defendant ineligible. Having demonstrated that the allegations of the petition were refuted by the record of conviction, the trial court was authorized to make a determination adverse to the petition, pursuant to *Drayton*.[7]

In any event, where, as here, the record of conviction shows as a matter of law that the defendant is ineligible, an error by the trial court at the prima facie stage is harmless. (See *People v. Cooper* (2020) 54 Cal.App.5th 106, review granted Nov. 10, 2020, S264684; *People v. Daniel* (2020) 57 Cal.App.5th 666, 675-676, review granted Feb. 24, 2021, S266336.) A determination, as a matter of law, that a defendant is ineligible because the record of conviction contradicts the defendant's assertions in the petition is

---

[7] Defendant's position is ironic, considering that he actively seeks to have the nature of his conviction relitigated, which, by necessity, would involve improper factual findings. We will overlook the inconsistent aspects of the argument.

not a weighing of credibility or a factual finding; it is a determination that the allegations of the petition are insufficient as a matter of law to warrant relief under section 1170.95.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P. J.

I concur:

McKINSTER _____
J.

RAPHAEL, J., Dissenting.

This case presents the type of felony murder conviction that the Legislature intended to be reviewed through an evidentiary hearing pursuant to Penal Code section 1170.95, subdivision (d).[1]  Whether petitioner Jerome Cornell Session demonstrated the "reckless indifference to human life" now required for a felony murder conviction (§ 189, subd. (e)(3)) demands fact finding and a careful review under the factors provided in *People v. Clark* (2016), 63 Cal.4th 522, 614-623 (*Clark*), which no court has performed in this case.  I would remand for an evidentiary hearing.

I

Section 1170.95 allows a petitioner who was held responsible for another person's killing under a felony murder theory to have the murder conviction vacated if the petitioner cannot now be convicted of murder because of changes to the law.  (§ 1170.95, subd. (a)(3).)  A person now can be convicted under a felony murder theory only if he was a major participant in the felony who acted with "reckless indifference to human life."  (§ 189, subd. (e)(3).)

In 2006, Session robbed a convenience store with Shamar Lavette Thornton.  During the robbery, Session was unarmed, but Thornton produced a gun and shot the clerk.  Following the robbery, Session turned himself in to the police, waived his

---

[1]  Undesignated statutory references are to the Penal Code.

1

*Miranda* rights, and was interviewed at length. (*People v. Session* (Sept. 14, 2012, E053942) [nonpub. opn.].)

We characterized Session's extensive interviews this way in our opinion in Session's direct appeal: "He claimed that he was not expecting Thornton to use a gun during the robbery, and thought they would simply 'strong arm' the clerk without weapons. [Session] stated that he was unaware Thornton was carrying a gun that night, although he had heard of Thornton carrying guns previously. Despite the surprise of seeing Thornton with a gun, he nevertheless continued to participate in the robbery." (*People v. Session*, *supra*, E053942.) We further stated that Session said he intended to "sock" the clerk a couple times, just so the robbers could get away. (*Ibid.*) But: "As [Session] raised his fist to hit [the clerk], Thornton shot [the clerk]. [Session] claimed the shot grazed his arm, and he turned to Thornton with a look of shock before turning around and quickly walking out of the store toward his car. After [Session] left the back room he heard '[a]t least' seven more shots coming from the back area." (*Ibid.*)

Our record contains the lengthy transcripts of police interviews with Thornton as well as with Session. As we stated in Thornton's direct appeal, Thornton admitted initiating the robbery and being the shooter. (*People v. Thornton* (Oct. 18, 2012, E048343) [nonpub. opn.].) We summarized Thornton's statements about Session this way: "[Session] was surprised when [Thornton] pulled out the gun. Several times during the interview, [Thornton] indicated [Session] was hesitant during the incident. [Session] stood back as if he did not want to participate." (*Ibid.*)

2

Individual statements from Session and Thornton during the interviews are more specific. The transcripts in our record show that Thornton, for instance, said that Session tried to discourage the shooting: "But he was like trying to block me from shooting the dude . . . he said it's not necessary. . .we got the money, let's go, basically, you know what I mean?" That is an indication (if credited) that Session acted to try to deter the killing. For his part, Session indicated that he communicated "what the hell is you doin'" to Thornton, but it is not clear whether Session meant that he used those words.

Thornton and Session each were separately tried and convicted of the first-degree murder of the clerk, with Session convicted on a felony murder theory for the homicide Thornton committed. Session was also convicted of a robbery-murder special circumstance, which included a finding of "reckless indifference" to human life.

Several years after Session's conviction, our Supreme Court decided *Clark*, *supra*, 63 Cal.4th at pp. 614-623, which clarified the application of the reckless indifference standard to the robbery-murder special circumstance. Under *Clark*, even the fact that a person planned or participated in an armed robbery "does not establish reckless indifference to human life"; the defendant must have knowledge of an elevated risk to human life "'beyond those risks inherent in any armed robbery.'" (*In re Scoggins* (2020) 9 Cal.5th 667, 682 (*Scoggins*).) *Clark* articulated factors that our Supreme Court and other appellate courts had considered in analyzing the reckless indifference of non-shooters convicted of felony murder. (*Clark*, *supra*, 63 Cal.4th at p. 618.) Today, now that "reckless indifference to human life" is required for a felony murder conviction as

3

well as for the robbery-murder special circumstance, a jury might be instructed on the *Clark* factors if Session were tried for the convenience store murder, under an optional portion of CALCRIM No. 540B. An appellate court would employ the *Clark* factors in analyzing whether sufficient evidence supports Session's felony murder conviction.

From the facts recounted above, several *Clark* factors might well register in Session's favor, including (1) his lack of knowledge that a gun would be used in the robbery (*Clark*, *supra*, 63 Cal.4th at p. 618); (2) that he did not use a gun himself (*ibid.*); (3) that only one gun was used (*ibid.*); (4) the short duration of the robbery (*id.* at pp. 620-621); (5) a lack of evidence that Session was aware Thornton had a propensity for violence (*id.* at p. 621); and (6) Session's efforts to minimize the risks of violence during the robbery (*id.* at p. 621-623). The evidence bearing on factors might include testimony (or the extensive post-arrest statements) from Session and Thornton, as well as the store surveillance videos of the robbery that were played at trial. The *Clark* factors are all evaluated together by a trial court, and no one factor "'is necessary, nor is any one of them necessarily sufficient.'" (*Id*. at p. 618 [quoting *People v. Banks* (2015) 61 Cal.4th 788, 803 (*Banks*)].) Session's actions after Thornton's shooting began would clearly be a part of the analysis—to what extent did he try to discourage the killing, as Thornton stated he did?—but our Supreme Court has recently explained that "when different inferences may be drawn from the circumstances, the defendant's actions after the shooting may not be very probative of his mental state." (*Scoggins*, *supra*, 9 Cal.5th at pp. 679-680.)

In Session's direct appeal from his conviction on the robbery-murder special circumstance, which we decided in 2012, we were not asked to review the sufficiency of the evidence supporting the special circumstance, and *Clark* had not yet been decided. Instead, we were asked to review the denial of a defense requested modification to the jury instructions, which concerned direct and circumstantial evidence of Session's mental state. We rejected that argument, and we also held the denial of the instruction harmless in any event, explaining the evidence in a manner that (of course) did not address the later articulated *Clark* factors. Our reasoning was that Session "continued to participate in the robbery even after seeing that Thornton was using a gun"; that Session used violence himself; and that he "did not stop Thornton from shooting" the clerk and instead "just walked away" after Thornton fired the first shot. (*People v. Sessions*, *supra*, E053942.)

Under section 1170.95, Session needs no evidentiary showing to plead a prima facie case, as the bar to obtain an evidentiary hearing was "'intentionally and correctly set very low.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 972.) Because of the low bar, we are required to remand for a section 1170.95 evidentiary hearing even where it seems that "extensive" briefing will not be needed to show the petition without merit. (*Id.* at 967.) But this seems a more difficult case, fitting squarely within the types of murder convictions that the Legislature expected to be carefully evaluated under section 1170.95, subdivision (d). Session should be permitted an evidentiary hearing.

5

## II

The majority follows a disputed line of case law that denies Session a section 1170.95 evidentiary hearing now, and possibly forever.  That split in Court of Appeal caselaw is set to be resolved in *People v. Strong*, review granted, March 10, 2021, S266606.

Under the cases that the majority follows, a jury's felony murder special circumstance finding precludes a section 1170.95 evidentiary hearing, even though any appellate review of that finding would have come before *Banks* and *Clark*.  (Maj. opn., *ante*, at pp. 7-25.)  Those cases hold that section 1170.95 review of the murder conviction is precluded unless the petitioner succeeds in setting aside the special circumstance findings by a petition for a writ of habeas corpus; only after setting aside the special circumstance would the petitioner "be in a position to successfully petition under section 1170.95 to vacate her murder conviction."  (*People v. Gomez* (2020) 52 Cal.App.5th 1, 17, review granted, S264033, Oct. 14, 2020.)

In contrast, I would follow the cases holding that a section 1170.95 challenge is not precluded by a pre-*Banks*/*Clark* special circumstance finding.  (See, e.g., *People v. Arias* (2021) 66 Cal.App.5th 987, 1000; *People v. Pineda* (2021) 66 Cal.App.5th 792, 797; *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 430; *People v. Harris* (2021) 60 Cal.App.5th 939, 954-956; *People v. Law* (2020) 48 Cal.App.5th 811, 822.)  I do not think there is a basis for preclusion.

The majority's "habeas first" rule provides a theoretically possible, although circuitous, route for a petitioner such as Session to eventually obtain section 1170.95 review of his murder conviction. Generally, sufficiency of the evidence claims are barred on habeas (*In re Lindley* (1947) 29 Cal.2d 709, 723), as are claims that have been rejected on direct appeal, or that could have been raised on direct appeal but were not (*In re Harris* (1993) 5 Cal.4th 813, 825 & fn.3). But our Supreme Court has held that *Banks* and *Clark* claims are an exception to these procedural bars. Because *Banks* and *Clark* "clarified the meaning of the special circumstances statute," a defendant may successfully bring a petition for habeas corpus to set aside felony murder special circumstance findings as supported by insufficient evidence, even if he unsuccessfully challenged the special circumstance before *Banks* and *Clark*. (*Scoggins*, *supra*, 9 Cal.5th at pp. 673-674.) Thus, Session is not barred by these procedural bars from succeeding in a habeas petition to set aside his special circumstance finding.

But there are two reasons why the Legislature would not have intended a successful habeas challenge to the special circumstance as a section 1170.95 prerequisite.

First, a habeas petition is subject to *other* procedural bars that can preclude a court's review, ensuring a court could never review the murder conviction even if the petitioner had a winning case on the merits. For one, timeliness is a ground for denial of a habeas petition (*In re Clark* (1993) 5 Cal.4th 750, 782, 787), and the fact that Session has not in several years brought a *Banks*/*Clark* habeas challenge to his special circumstance finding could be a basis for denying it if brought now. The majority alludes

7

to the potential habeas untimeliness even as it requires Session to file a habeas petition as a gateway to section 1170.95. (Maj. opn. *ante* at p. 25.) For another thing, our Supreme Court has indicated that a *Banks/Clark* claim can be reviewed on habeas only to the extent there is no material dispute as to the facts (*Scoggins*, *supra*, 9 Cal.5th at p. 667), and it is possible that relevant facts here would be disputed, including precisely what Session did after Thornton fired the first shot. If, for any reason, Session is procedurally barred from habeas review, today's opinion means that his section 1170.95 challenge to his murder conviction will never be reviewed regardless of its merits.

Secondly, section 1170.95, subdivision (d)(3) allows the parties to offer new or additional evidence to evaluate the murder conviction, an opportunity not available on habeas review of the sufficiency of evidence. It appears that Thornton's post-arrest statements were not admitted at Session's trial; such accomplice post-arrest statements are typically inadmissible hearsay (see, e.g., *People v. Duarte* (2000) 24 Cal.4th 603, 610).[2] Our record contains transcripts of the full interviews, however, and they contain statements from Thornton relevant to Session's claim that he was not recklessly indifferent to the store clerk's life. These statements from Thornton may be admissible as new evidence in a section 1170.95 proceeding if they are deemed reliable (*People v.*

---

[2] Our opinion in Session's direct appeal states only that Session's *own* interview was admitted into evidence, and it discusses no statements from Thornton. (*People v. Session*, *supra*, E053942.) Our earlier opinion from Session's first trial, which reversed the special circumstance finding, states that a joint interview of Session and Thornton also was admitted in that trial. (*People v. Session* (Feb. 9, 2011, E049939 [nonpub. opn.].)

8

*Williams* (2020) 57 Cal.App.5th 652, 660-662), or Session could offer new testimony from Thornton.  In any event, new or additional evidence potentially can make the difference in the section 1170.95 determination—which focuses on whether a petitioner could be convicted of felony murder *today*—but that same evidence typically would be uncognizable in a habeas challenge to the sufficiency of the robbery murder special circumstance *at the trial*.  Making a successful habeas petition a precondition to a section 1170.95 hearing can frustrate the statutory scheme by precluding review of a meritorious challenge to the murder conviction based on new or additional evidence.

I would hold that petitioner has pled a prima facie case, and I would reverse and remand for the trial court to hold a hearing under section 1170.95, subdivision (d) on whether petitioner is guilty of murder under a still viable theory.


RAPHAEL   

J.